832 So.2d 337 (2002)
STATE of Louisiana
v.
Jerome HULBERT.
No. 2001-KA-2174.
Court of Appeal of Louisiana, Fourth Circuit.
October 30, 2002.
*338 Harry F. Connick, District Attorney, Val M. Solino, Assistant District Attorney, Scott Peebles, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellant.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
Jerome Hulbert was charged by bill of information on October 2, 2000 with one count of distribution of cocaine, a charge to which he subsequently pled not guilty.[1] A twelve-person jury ultimately found him guilty as charged. The court denied his motions for reversal of verdict and directed acquittal. The State filed a multiple bill alleging Hulbert was a third offender. The matter was reset several times, and on August 22, 2001 the court sentenced Hulbert to serve twenty years at hard labor as a third offender. The State filed a motion to correct an illegal sentence, which the court denied. Hulbert and the State now appeal his sentence.
FACTS
At trial, N.O.P.D. Sgt. Glasser testified that he and his partner were working undercover on the evening of August 29, 2000. As they drove to the corner of St. Phillip Street and N. Claiborne Avenue shortly before 10:00 p.m., they observed a woman later identified as Melissa White standing on the corner. Ms. White asked them, "What's up?" as they passed. Sgt. Glasser testified they circled the block and drove past Ms. White a second time. She again asked them, "What's up?" In response, Sgt. Glasser pulled the car to the curb, and Ms. White walked up to the driver's window. In response to her further inquiry of "What's up", Sgt. Glasser told her he was looking for a twenty or a quarter, which he testified was street slang for a piece of crack cocaine costing $20 or $25. He stated she replied she could get him a twenty, but she had to go into a bar on the corner to get it. Sgt. Glasser testified Ms. White went inside the bar and shortly returned, handing him what appeared to be a rock of crack cocaine. He testified he gave her a $20 bill that had earlier been photocopied. He then drove off and radioed other officers in the area Ms. White's description and that the deal was complete. He testified he later drove *339 by the scene and identified Ms. White as the person who sold him the cocaine.
Officer Patrick Evans testified he was part of the takedown team that night. He stated that after receiving the radio call from Sgt. Glasser that the deal was complete, he pulled up to the bar just as Ms. White was entering it. He testified he followed her inside and observed her walk over to a man later identified as the defendant Jerome Hulbert, who was sitting at a video poker machine. Officer Evans stated that he watched Ms. White hand Hulbert a $20 bill. As she turned around to leave, Officer Evans stopped her and passed her to another officer who had followed him inside the bar. He then grabbed Hulbert and arrested him and Ms. White. Officer Evans testified that in addition to the $20 bill that Sgt. Glasser used in the drug sale, they also seized from Hulbert $280 that he had in his hand. He testified no drugs were found in Hulbert's possession.
Melissa White admitted selling the cocaine to the undercover officer. She stated she began the evening at a nearby hotel where she traded sex for drugs. She then went to the bar at the corner of St. Phillip and N. Claiborne, where she encountered Hulbert, whom she knew as "Moe." She stated Hulbert nodded to her as she entered, which she took to mean that he had drugs to sell. She stated she had no money, so she walked back outside to try to hustle some money for drugs. She stated that she soon convinced some man to give her $5, which she used to buy a small amount of crack from Hulbert. She stated she gave the crack to the man, and they went into a nearby alleyway to smoke it. She stated she then took up her position in front of the bar, and a car passed her. She stated she asked the driver, "What's up?" The car turned the corner and came back by her again. She testified that after the second or third time the car passed, it stopped and the man inside the car told her he wanted to buy a twenty. She stated she went inside the bar and told Hulbert she needed more cocaine. She testified Hulbert went into the men's room, came back out, and gave her the rock. She then went back outside and gave the cocaine to the driver. In return, she got a $20 bill. She testified she then walked back inside and gave Hulbert the $20 bill. She stated she turned around and was detained by police officers. Ms. White admitted she had a prior conviction for possession of a crack pipe as well as her guilty plea for distribution of cocaine in this case. She also admitted that in return for her plea and her testimony at Hulbert's trial, she was to get a five-year sentence.
The parties stipulated that the rock Sgt. Glasser purchased from Ms. White tested positive for cocaine.
Jerome Hulbert denied giving Ms. White any drugs in the bar that night. He testified he was employed at the time of his arrest, and he was in the bar playing video poker. He stated he knew Ms. White from having a sexual encounter with her in the past, but since that time he had had nothing to do with her. He testified Ms. White came up to him and asked him for money for drugs. He stated he initially told her no, but she persisted, and he finally gave her $20 to make her go away. He testified he was winning at the machine, and fifteen to twenty minutes later Ms. White returned and shoved a $20 bill at him. He stated he took the money, and Ms. White began walking toward the front of the bar. At that time, police officers entered and detained him and Ms. White. He denied selling any drugs that night and denied hiding any cocaine in the men's room. He stated the other money seized from his hands was his winnings *340 from playing video poker. He admitted having prior convictions for weapons violations and for possession of cocaine.
ASSIGNMENTS OF ERROR
On appeal, both Hulbert and the State assign error as to his sentence. Hulbert contends the trial court erred by sentencing him as a third offender without first holding a hearing on the multiple bill. The State contends the trial court imposed an illegally lenient sentence based upon a change in the law that occurred after the commission of the crime in this case. Both of these claims have merit.
With respect to Hulbert's assignment of error, the record indicates the multiple bill hearing and sentencing were originally set for April 4, 2001. The transcript of that date indicates that the court ordered the fingerprint expert to take the defendant's prints. There was a bench conference, at the conclusion of which the court asked if there was a stipulation as to identity. There was no response, and the court reset the matter to April 20, 2001. The minute entries of April 20, May 4, June 1, June 12, June 14, and June 27, 2001 all indicate the matter was reset, with the June 27, 2001 entry noting the matter was reset to July 25, 2001. The record contains a certificate from a court reporter indicating that the only action taken on July 25 was to reset the matter to August 22, 2001. The transcript of August 22 begins with the court noting: "There's been a Multiple Bill hearing whereby it was determined the defendant is a triple offender."[2] However, there is no indication this hearing was ever held. As such, we find the trial court erred by sentencing Hulbert as a multiple offender when the record does not show that a hearing was ever held on the bill. Thus, we vacate Hulbert's the adjudication and sentence as a multiple offender and remand for resentencing.
The State contends the trial court erred by imposing an illegally lenient sentence. Although we vacate the multiple offender adjudication and sentence, we address this issue in the event the State files another bill and the court subsequently finds Hulbert to be a multiple offender. The State argues the court imposed the sentence based upon amendments to La. R.S. 15:529.1 which were enacted after the commission of the offense, and as such they were not applicable to this case.
This Court addressed this issue most recently in State v. Houston, 02-0255 (La. App. 4 Cir. 4/24/02), 818 So.2d 253, where this court held that the 2001 amendments to La. R.S. 15:529.1 embodied in Acts 2001, No. 403, are to have prospective application only. See also State v. Mayeux, XXXX-XXXX (La.6/21/02), 820 So.2d 524; State v. Carter, XXXX-XXXX (La App. 4 Cir. 10/3/01), 798 So.2d 1181; State v. Legendre, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1179; State v. Serpas, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1178.
The effective date of the amendments to La. R.S. 15:529.1 was June 21, 2001. The offense occurred in this case on August 29, 2000. We find the amendments to La. R.S. 15:529.1 are not applicable to this case.
CONCLUSION
Accordingly, for the foregoing reasons, we affirm Hulbert's conviction for distribution *341 of cocaine. We vacate his adjudication and sentence as a third offender and remand the case for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] Melissa White was also charged in the same bill with one count of distribution of cocaine. She pled guilty as charged and is not a party to this appeal.
[2] Although the minute entry of that date notes the defendant pled guilty to the multiple bill, the transcript reveals the court thought it had held a hearing on the matter and had previously adjudicated the defendant a third offender. Generally, where there is a discrepancy between a minute entry and a transcript, the transcript prevails. State v. Norwood, XXXX-XXXX (La.App. 4 Cir. 8/29/01), 802 So.2d 721; State v. Hall, 99-2887 (La.App. 4 Cir. 10/4/00), 775 So.2d 52.